Complainant has filed a pleading which he has entitled "Bill of Peace and to Quiet Title." Defendant moves to strike.
The bill alleges ownership of certain lands situate on the beachfront in Sea Isle City, and that complainant's predecessor in title, together with other owners of land on said beachfront, entered into an agreement in April of 1888 which provided "that the land on Ludlam's Beach * * * situate between Marine Place and low water mark, shall forever remain open and unobstructed and free for public use;" that Sea Isle City accepted the dedication and that the lands are now and have been ever since in the possession of the city for the use of its inhabitants, c., as a public street or bathing beach; that complainant is the riparian owner of his portion of the beachfront lands, subject to the easement aforesaid, and as such riparian owner is entitled under the statute to apply for and receive from the state a grant or lease for the lands fronting his property between high and low water mark, and that such a grant or lease would not be subject to the easement created by the agreement of 1888 aforesaid.
The averment of paragraph 11 is that Sea Isle City disputes complainant's right to receive from the state such a lease or grant as complainant contends he is entitled to, but to the contrary, insists that such a grant or lease would convey or lease the lands of the state subject to said easement. Complainant concludes by saying that no suit is impending to enforce or contest the said title, claim or encumbrance of said city of Sea Isle City. *Page 219 
The material prayers for relief are found in paragraphs 2, 3 and 4, as follows:
"2. That the said defendant may set forth and specify its title, claim, or encumbrance to or upon the lands and premises hereinabove described and upon the lands abutting the same below mean high water mark and how and by what instrument the same is derived or created.
"3. That the rights of all the parties to this suit in and to said lands may be fixed and settled by this court and the said defendant to have no estate, interest, claim or right in or encumbrance of said abutting lands below mean high water mark or any part thereof."
Paragraph 4 of the prayer prays that any question of the agreement of 1888 that may arise be declared.
From the foregoing, it will be noted that complainant does not allege that he or his predecessors in title have ever applied for a riparian grant or lease and that there is no averment in the bill that the present complainant intends to apply therefor.
It will be further noted that while the agreement of 1888 recites that the land embraced within the easement is situate between Marine Place and "low water mark" that complainant is not seeking any relief as to any lands other than those situate below mean high water mark.
The result of the observation just above made necessarily leads to the finding that that which complainant seeks to do is to have declared by this court the respective rights of the defendant, Sea Isle City, and the complainant of, in and to the lands beyond high water mark, and whether or not those lands are subject to the easement created by the agreement of 1888 aforesaid.
Before proceeding further, it may be observed from a reading of the bill of complaint that the complainant does not contend that there is any ambiguity in the language used in the dedicatory agreement of 1888 aforesaid, but that the sole purpose of the bill is to determine whether or not the dedication effected by the agreement of 1888 encumbers the lands below high water mark. *Page 220 
It has been so firmly established by the decisions of our Court of Errors and Appeals that the title to lands on the Atlantic ocean between high and low water mark are vested in the State of New Jersey as to require no citation of authority. However, in the case of Stevens v. Paterson and Newark Railroad Co.,34 N.J. Law 532, the Court of Errors and Appeals held that "the state is the absolute owner of the land in all navigable water within its territorial limits, and such land can be granted to any one, either public or private, without making compensation to the owner of the shore," and that the privilege accorded to the shore owner of reclaiming the land between the high and low water mark is a mere license which the legislature may revoke at any time before execution. The court also held in that case that the rights conferred by the Wharf act are also revocable before execution by the land owner; and the court further held that the riparian owner, by the common law, has no peculiar rights in this public domain as incidents of his estate, and that the privileges that he possesses to acquire such rights can be regulated or revoked at the will of the legislature, and that it is within the power of the legislature, by statute, to give the said lands below high water mark to any third party.
The right of the owner of the ripa to obtain a grant or lease from the State of New Jersey under the present act of the legislature is called a "pre-emptive right." Harz v. Board ofCommerce and Navigation, 126 N.J. Eq. 9; 7 Atl. Rep. 2d803.
It will be noted that the State of New Jersey, through its Board of Commerce and Navigation, is not a party to the present litigation, and indeed it could not be, there having been no application for or grant of the lands below high water mark, and yet if complainant is entitled to the relief he seeks, the decree of this court would be that the lands belonging to the state, and in which the complainant does not claim any title, were or were not encumbered by the easement created by the agreement of 1888. It would seem apparent that complainant is not entitled to such a decree and that under the law as above cited, defendant's alleged claim that the lands of the state are encumbered by the easement of way is without merit. *Page 221 
Of course, should the state grant or lease to complainant the land oceanward of the high water mark, and should the governing body of Sea Isle City, as it then or thereafter exists, desire to assert its claim as alleged by the complainant, the question arising in such litigation would be determined solely on the legal effect of the agreement of 1888, and there would be no necessity on the part of the complainant to introduce testimony or evidence to defeat the claim, so that the asserted claim does not constitute a cloud which complainant is entitled to have removed.
"It has been said that the true test in determining whether or not an instrument or claim constitutes a cloud on title is: Would the owner of the property in an action at law brought by the adverse party, founded upon the instrument or claim, be required to offer evidence to defeat a recovery? If such proof would be necessary the cloud exists; if the proof would be unnecessary, no shade would be cast by the presence of the instrument or claim."51 Corp. Jur. 152 § 24.
Complainant relies on Renwick v. Hay, 90 N.J. Eq. 148;106 Atl. Rep. 547, in which Vice-Chancellor Lane ably sets forth a class of cases where equitable rights will be declared and protected by this court, and particularly where there are conflicting asserted rights in the use of common easements of way, and in which he points out that where there is not an adequate remedy at law and no way of settling questions of title therein, equity will act. But in this case the rights to be determined were those which arose by reason of several conveyances. The Vice-Chancellor said:
"The rights of the parties spring from a number of conveyances. There is a common interest of both parties in the lands of the other. The easements are to be enjoyed in common. There is no remedy at law. Ejectment cannot be maintained, for there is no dispossession, nor can trespass. Defendant is not now using, and has not for a long period of time, if at all, used, the ways that complainant insists she is not entitled to use, nor has complainant used the ways defendant insists he is not entitled to use. The rights of the parties may depend upon the testimony of witnesses as to the conduct of the parties. This testimony may be lost. Unless *Page 222 
a suit such as that now brought can be maintained, complainant is remediless."
In the case sub judice, there is no common interest of complainant and defendant in other lands than those embraced in the agreement of 1888, and absolutely no interest of either in the lands oceanward of high water mark. The easement to be enjoyed by complainant, as well as the defendant and the public at large is on the lands to high water mark and not oceanward thereof. Any asserted right of defendant that complainant's pre-emptive right to a riparian grant or lease is subject to an easement under the agreement of 1888 is untenable. The agreement of 1888 does not create any rights in lands oceanward of the high water mark, as heretofore pointed out. Furthermore, the rights of complainant and defendant, if either ever had or now have any to the lands oceanward of the high water mark, cannot depend on any testimony of witnesses or conduct of the parties, so that there is a total absence of any necessity for maintaining the present suit in order that the complainant may be advantaged by its extrinsic evidence in order to defeat the asserted claim of the defendant.
Is there a remedy at law? Of course, if either complainant or defendant undertook to take possession of the lands oceanward of the high water mark the state would have ample remedy and, of course, as between complainant and defendant, neither one may take legal action against the other for the simple reason that neither has any rights to the lands oceanward of the high water mark which require protection or which are subject to litigation. If complainant asks for a grant or lease from the state, the question to be determined would be — is complainant the owner of the ripa? — and defendant has nothing upon which to base a claim that the lands to be covered by the grant would be subject to the easement. The production of the agreement of 1888 could not support the claim and the parties could not extend the terms of that grant by their acts, or otherwise, so as to affect lands oceanward of the high water mark owned by the state. A mere verbal assertion of a claim by defendant is not subject to a bill for relief. 51 Corp. Jur. 150 § 23. Of course, verbal *Page 223 
claims asserted as being founded on a conveyance or other instrument of record would be, but the claim to be asserted under a conveyance or other instrument must have at least a color of legality in order to be classified as a claim which would cloud complainant's title. If the defendant had any right at all in the lands oceanward of the high water mark (which it clearly does not) it would be a purely legal right involving a purely legal question, and would not invoke, under the averments of the bill, any equitable intervention.
On its face, the bill is not a bill of peace. It cannot be a bill under the statute, for the complainant admits possession to be in the state and the upland in Sea Isle City, and while billsquia timet are sustained at times when only legal titles are involved, where there is no adequate remedy at law, yet this relief is resorted to in cases where extrinsic evidence is necessary to repel a claim which, on its face, is prima facie
valid and not where such evidence is not required and the asserted claim is plainly untenable. Renwick v. Hay, supra;DeLuca v. Ventura, 105 N.J. Eq. 288; 147 Atl. Rep. 580, and cases cited in both of the above decisions.
In Fisher v. Jackson (Wash.), 206 Pac. Rep. 929, the complainant filed a bill to quiet title to federal lands in which he had an alleged pre-emptive right to purchase, and in dismissing the bill the court said:
"The question of ownership can only be determined and the title quieted after it has passed from the United States to an individual."
So in the instant case, should the complainant apply for and obtain a grant or lease, it then would be in position to file a bill to quiet title as against any claim asserted by the defendant which constituted a cloud on the title conveyed by the state.
In the case of Johnson v. Lincoln County (Montana),146 Pac. Rep. 471, the complainant likewise had a pre-emptive right to purchase public lands from the federal government. The county instituted tax sale proceedings against the lands of the federal government and the complainant sought an injunction to restrain the sale, alleging that it would constitute a cloud on his title. On motion by the defendant the *Page 224 
bill of complaint was dismissed and on appeal the court affirmed the decree, and said:
"The government was the owner of the lands, and its rights cannot be prejudiced by any sale which the county treasurer may make. His tax deed, if one should be issued, will not convey any interest in the lands whatever. * * * With these premises established, the conclusion follows that the sale, if made, cannot cast any cloud upon the plaintiff's title, for he has none, and will not affect his preferential right of entry. It is axiomatic in the law that one who is not injured or threatened with injury cannot complain."
So in the instant case, the verbally asserted claim of Sea Isle City cannot affect or infringe any rights of the complainant in the lands oceanward of high water mark because it has no right or title thereto.
Order to strike will be advised.